UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
STEPHEN FERRARO,

        Plaintiff,

-vs-                                      **COMPLAINT**

RAMAPO CENTRAL SCHOOL
DISTRICT, JAMES SMITH,            **JURY TRIAL DEMANDED**
as aider-and-abettor,

        Defendants.
----------------------------------------------------X

## I INTRODUCTION

1. Pursuant to the Americans with Disabilities Act, the Rehabilitation Act, the Family and Medical Leave Act and the New York State Executive Law, Plaintiff Stephen Ferraro files this action to redress the unlawful termination of his employment. As outlined below, at all times relevant to this action, Plaintiff was a Type 1 diabetic. Defendants terminated his employment because of his disability, and in retaliation for complaining about disability discrimination.

## II PARTIES

2. Plaintiff resides in Monroe, New York, within this judicial district.

3. Defendant Ramapo Central School District is a municipal corporation organized pursuant to the laws of the State of New York. It may sue and be sued.

4. At all times relevant to this case, Defendant James Smith supervised Plaintiff's employment and was responsible for his termination.

## III JURISDICTION AND VENUE

5. As Plaintiff brings this action under the Americans with Disabilities Act, this

Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1343(a)(3) & (4), 29 U.S.C. § 701 et seq. and 42 U.S.C. § 12101 et seq.

6. Pursuant to 28 U.S.C. § 1367, this Court has subject matter jurisdiction over Plaintiff's state law claim because it arises from the same nucleus of operative facts as his federal claim.

7. As the events giving rise to this action arose in the County of Rockland, this action is properly venued in the Southern District of New York.

8. On December 21, 2015, Plaintiff timely dual-filed a charge of discrimination with the New York State Division of Human Rights and the Equal Employment Opportunity Commission.

9. On March 7, 2017, Plaintiff received a right-to-sue letter from the EEOC.

**IV STATEMENT OF FACTS**

10. At all times relevant to this action, Plaintiff was a Type I Diabetic, a disability under state and federal law. This condition substantially limits the major life activity of endocrine function.

11. Plaintiff commenced working for the School District on December 9, 2013 as a custodian. He was a substitute-custodian who worked on a full-time basis filling in for other custodians. In that role, Plaintiff earned between $23,000 and $25,000 per year, without benefits.

12. Although Plaintiff was a substitute-custodian, he was still a school district employee, not an independent contractor. Plaintiff's employer had full control over his hours and job responsibilities, and the district took out the taxes from his

paychecks. At the time that Plaintiff was terminated from his employment, he was the only substitute-custodian at the school district. Although Plaintiff was a substitute custodian, he was expected to come to work every day. He was also expected to work overtime when needed.

13. At all times during his employment, Plaintiff was an excellent and conscientious custodian, and no one at the school district advised him otherwise. Plaintiff had also earned letters of recommendation from his employer.

14. Because of Plaintiff's diabetes, he had to miss work from time to time for medical appointments and surgery. Plaintiff advised management on approximately 15 occasions in 2014 that he was unable to work because of his disability. (Plaintiff only took time off for medical purposes; he did not take vacation days, as he was not entitled to them).

15. In 2015, Plaintiff missed work on July 2, August 12, September 1-2, October 19, October 28 and November 13.

16. Each time Plaintiff missed work in 2014-15, he provided Defendants with a medical note. At the time Plaintiff sought these days off, Defendant Smith expressed hostility toward these medical needs by interacting with Plaintiff in a hostile manner and assigning him an exceptionally large workload.

17. Since Plaintiff was a sub-custodian, he sought a full-time custodian position, which would have paid $34,000 per year, plus benefits. Over the course of two years, four full-time custodian positions opened up. Plaintiff told Smith that he sought appointment to these positions. In August 2014, in rejecting Plaintiff for

the position, Smith told Plaintiff that he had a great work ethic but had an attendance problem. When Plaintiff replied that he had missed work for medical reasons, Smith replied, "I don't care. You're not being appointed because of your attendance." Yet, all the while, Smith was aware that Plaintiff had missed work because of his disability and that his doctor has authorized these absences.

18. Plaintiff was also passed over for the full-time custodial position on two other occasions prior to my termination. Accordingly, on September 30, 2015, Plaintiff sent a letter to the following individuals at the school district, Jamie Muller, at Human Resources; James Smith, Roy Bellser, another supervisor; Assistant Superintendent Kelly Siebert and Superintendent Stephen Walker. In the letter, Plaintiff wrote:

> I feel that my rights under the Americans with Disabilities Act are being violated. I feel that I am being discriminated against due to my medical condition of Type 1 Diabetes. There have been 3 people appointed in the past 2 years. I have had several recommendations regarding my good work performance. Any sick days that I have had as a result of my illness have been documented with doctor's notes.
>
> I understand that there may be an upcoming custodian position and I would like to be considered as I am the only substitute custodian available. I would like to become appointed and have the same opportunity to progress as anyone else.

19. On October 29, 2015, Plaintiff told Mr. Smith that he needed to miss work from November 3-9, 2015 for hand surgery relating to his diabetic condition. Smith told Plaintiff to reschedule the surgery for Thanksgiving week so that Plaintiff would not miss work. During that conversation on October 29, Smith and

Plaintiff discussed the open position for full-time custodian. Smith said the reason Plaintiff was not appointed to these positions was his attendance. Smith also said the school district was considering whether to continue its employment relationship with Plaintiff, and that he would speak with Superintendent Stephen Walker about this.

20. Pursuant to Smith's request, Plaintiff proceeded to have the surgery during Thanksgiving week, November 24-30, 2015. When Plaintiff told Smith that Plaintiff was rescheduling the surgery to accommodate him, he replied, "You're not accommodating me, you're accommodating yourself."

21. After Plaintiff had the surgery, his doctor gave him a note that said Plaintiff could not work from November 24 through November 30. Plaintiff's doctor then revised Plaintiff's recovery schedule in a note dated December 9, 2015 that said Plaintiff could return to work on December 11, 2015. Plaintiff faxed this note to Defendants twice on December 9, 2015. Plaintiff also left Smith a voice mail stating that he would return to work on December 11, 2015.

22. On November 3, 2015, Plaintiff sought medical leave under the Family and Medical Leave Act, sending in his request by fax and certified mail. Plaintiff sought this leave in connection with his anticipated hand surgery. Defendants did not respond to Plaintiff's FMLA request.

23. Plaintiff was eligible for FMLA leave because he sought this benefit in connection with a serious health condition, i.e., hand surgery necessitated by his Type I Diabetes. At the time Plaintiff sought leave, he had worked at least one year for

Defendants, and his paycheck stubs show that he had worked 137691 hours in the 12 months prior to November 6, 2015.

24. On December 2, 2015, while Plaintiff was out on medical leave, the school district terminated his employment. The termination letter, written by Superintendent Walker, stated Plaintiff was terminated "due to the lack of your ability to provide a continuity of services." Walker stated that he would recommend Plaintiff's termination to the Board of Education at its December 15, 2015 meeting.

25. On December 10, 2015, Smith called Plaintiff after he had faxed over the December 9, 2015 doctors' note. Smith told Plaintiff that he had been terminated and that the school district had sent me a letter to that effect. Plaintiff was not aware of this letter because it was sent to the wrong address.

26. Unionized full time custodians often missed more work than Plaintiff did. Plaintiff knew this because he would cover for them when they did not work. Plaintiff was singled out because of his disability and because he wrote a letter on September 30, 2015 that complained about disability discrimination.

27. Defendants intentionally terminated Plaintiff's employment because of his disability. Plaintiff was also terminated in retaliation for complaining about disability discrimination and requesting leave under the FMLA. While Defendants claimed at the time of Plaintiff's termination that he had an attendance problem, they knew that Plaintiff's time off from work related to his diabetes.

28. On December 21, 2015, Plaintiff filed a discrimination complaint with the State

Division of Human Rights. In opposition to Plaintiff's complaint, Defendants argued that Plaintiff was absent from work on 58 occasions during the 2014 calendar year, and that 45 of those absences were unexcused. They further argued that, during the first nine months of 2015, Plaintiff was absent from work on 55 occasions, and that 29 of those absences were unexcused. In contrast, Defendants argued, the full-time custodians took 7.65 sick or personal days per year in 2014.

29. In rebuttal to Defendants' claims about Plaintiff's absences, Plaintiff supplied the SDHR with more than 40 paycheck stubs from 2014-15 that showed Plaintiff typically worked full weeks on a regular basis, often up to 40 hours per week, and that he was paid for working hours that exceeded the number of days that Defendants claimed Plaintiff failed to work. Contrary to Defendants' inflated claims about Plaintiff's absences, in 2014-15, Plaintiff only advised Defendants that he was unable work on 22 occasions, all of which stemmed from his disability.

30. While Defendants told the SDHR that Plaintiff had missed work on dozens of occasions in 2014, on June 9, 2014, the Assistant Superintendent advised Plaintiff in writing that the district would utilize Plaintiff's services for the 2014-15 school year. Plaintiff was also given a pay increase in July 2014. The district would not have prepared this written commitment to Plaintiff's continued employment had he regularly missed work. Yet, the District falsely represented to the SDHR that, from January 21, 2014 through June 7, 2014, Plaintiff had missed 31 days of work (and left early on one occasion).

31. As further evidence of Defendants' pretext, during the week immediately prior to June 9, 2014, Defendants advised the SDHR, Plaintiff had missed work three times, and left early once. Defendants would not have offered Plaintiff another year of employment had he truly missed work this frequently in 2014.

32. As further evidence of Plaintiff's good job performance and the pretextual nature of Defendants' claim that Plaintiff had frequently missed work in 2014-15, on March 12, 2014, Plaintiff received a largely positive performance review that said nothing about what Defendants later claims was his poor attendance. Instead, the performance review said Plaintiff is a "[v]ery hard working individual always ready to learn and do more." Yet, in the SDHR, Defendant claimed that, by March 12, 2014, Plaintiff had missed work six times from January 21, 2014 through February 14, 2014.

33. Similarly, on August 28, 2015, Dominic DeLaurentis, a maintenance worker at the school district, wrote, "I also like to highlight all the dedication of the staff involved in the project, but in particular the dedication of Steve Ferraro who turned out to be a main asset assisting the maintenance, custodial and ground here at Montebello ES without hesitation." DeLaurentis would not have praised Plaintiff's dedication to the project had he repeatedly missed work in 2015. According to Defendants' position statement to the SDHR, Plaintiff missed work more than 40 times from January 2015 through July 24, 2015.

34. As a consequence of Plaintiff's unlawful termination, he has sustained emotional pain and suffering.

35. As a consequence of Plaintiff's unlawful termination, he has lost back wages and front pay, as well as a loss of benefits.

## V   CAUSES OF ACTION

36. Plaintiff restates the allegations in ¶ 1-35 as if fully restated herein.

37. Defendant School District terminated Plaintiff's employment in violation of the Americans with Disabilities Act.

38. Defendant School District retaliated against Plaintiff in violation of the Americans with Disabilities Act.

39. Defendant School District terminated Plaintiff's employment in violation of the Rehabilitation Act.

40. Defendant School District retaliated against Plaintiff in violation of the Rehabilitation Act.

41. Defendant School District discriminated against Plaintiff in violation of the Family and Medical Leave Act.

42. Defendant School District retaliated against Plaintiff in violation of the Family and Medical Leave Act.

43. Defendants terminated Plaintiff's employment in violation of the New York Executive Law.

44. Defendants retaliated against Plaintiff in violation of the New York Executive Law.

## VI   PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Honorable Court to:

a. accept jurisdiction over this case;

b. empanel a jury to hear and decide this case;

c. award to Plaintiff compensatory damages for his pain and suffering;

d. award to Plaintiff compensatory damages for his back and front pay and lost benefits;

e. award to Plaintiff reasonable attorneys' fees for time expended in prosecuting his federal claims;

f. order Defendants to restore Plaintiff to his former position with the School District; and

g. award to Plaintiff such other relief deemed just and proper.

Dated:   March 22, 2017

Respectfully submitted,

STEPHEN BERGSTEIN

BERGSTEIN & ULLRICH, LLP
5 Paradies Lane
New Paltz, New York 12561
(845) 469-1277
Counsel for Plaintiff