UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
STEPHEN FERRARO,
             Plaintiff,

v.

RAMAPO CENTRAL SCHOOL DISTRICT,
             Defendant.
--------------------------------------------------------------x

**OPINION AND ORDER**

17 CV 2039 (VB)

Briccetti, J.:

Plaintiff Stephen Ferraro brings this disability discrimination and retaliation lawsuit under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Family and Medical Leave Act ("FMLA"), against defendant Ramapo Central School District, now known as the Suffern Central School District (the "district"). Plaintiff claims the district fired him from his job as a substitute custodian (i) because plaintiff was disabled by diabetes, and (ii) in retaliation for a letter plaintiff sent to the district asserting plaintiff was being discriminated against due to his disability, and for a form plaintiff submitted to the district respecting FMLA leave.

Now pending is the district's motion for summary judgment, which is partially unopposed. (Doc. #57).

For the reasons set forth below, the motion is GRANTED IN PART, as to plaintiff's disability discrimination claims and FMLA retaliation claim, and DENIED IN PART, as to plaintiff's claims of retaliation under the ADA and Rehabilitation Act.

The Court has subject matter jurisdiction under 29 U.S.C. § 1331.

1

**BACKGROUND**

The parties have submitted memoranda of law, statements of material fact pursuant to Local Civil Rule 56.1, declarations, and supporting exhibits. Together, they reflect the following factual background.

Plaintiff worked for the district as a substitute custodian from November 2013 through December 2015. He worked full-time, five days per week, on a 3:00 p.m. to 11:00 p.m. schedule.

Plaintiff got the job after meeting James Smith in November 2013. Smith supervised the district's custodial staff. Plaintiff was working as a custodian at a hospital where Smith was a patient; they struck up a friendly conversation, and Smith recommended that plaintiff apply for the substitute custodian job. During their second conversation at the hospital, Smith and plaintiff shared that they both had diabetes. Indeed, Smith was in the hospital for diabetes treatment at that time.

Smith recommended that the district hire plaintiff, and the district did. Plaintiff testified he understood he got the job "as a result of" Smith's recommendation. (Doc. #61 ("Johnson Decl.") Ex. A at 12).[1]

Plaintiff's diabetes required him to take "a minute to a minute and a half" several times each workday to check his blood glucose levels and inject insulin if needed. (Doc. #72 ("Pl. Decl.") ¶ 18). The only workplace accommodations plaintiff required were those short breaks, "a regularly-scheduled meal break," and days off as needed to attend to medical problems. (Id.

---

[1] Citations to deposition transcripts reference page numbers automatically assigned by the Court's Electronic Case Filing system.

¶ 21). Smith knew plaintiff needed these accommodations and "generally provided them." (Id.). Plaintiff did not request any other workplace accommodations.

Plaintiff frequently did not show up for work at the district.

The record contains most of plaintiff's time cards from December 2013 through March 2015 (Doc. #58 ("Smith Decl.") Ex. C), as well as numerous entries recording in daily planners plaintiff's absences from December 9, 2013, through November 30, 2015 (Pl. Decl. Ex. 1). The record also contains 25 doctor's notes plaintiff submitted to the district during his employment there.[2] (Smith Decl. Ex. G at 2–26). Plaintiff testified he does not recall submitting any other medical documentation to the district to justify an absence from work. The 25 doctor's notes excuse plaintiff's absences on approximately 60 workdays in total.

Together, plaintiff's time records and doctor's notes indicate he tallied at least 78 unexcused absences from March 2014 through November 2015.[3] This attendance record was the worst of any custodian working for the district at the time.[4] Smith testified plaintiff's colleagues complained to Smith "a lot" starting at the end of the 2014–15 school year about plaintiff's attendance. (Doc. #71 ("Bergstein Decl.") Ex. 2 at 56).

---

[2]  Plaintiff also wrote and submitted an undated note stating he would miss nine days of work in May and June 2015, with no further explanation. (Smith Decl. Ex. G at 27).

[3]  Defense counsel submitted a color-coded calendar of plaintiff's alleged absences. (Johnson Decl. Ex. P). Approximately a dozen of the purportedly unexcused absences on that calendar are not reflected as such in the time records before the Court. For present purposes, this discrepancy is immaterial: even excluding those days, the record shows plaintiff missed 78 workdays without excuse.

The Court also notes the parties dispute whether plaintiff missed some workdays to attend a firefighter training and to travel to Florida. Again, those disputes are immaterial in light of the number of workdays plaintiff undisputedly missed.

[4]  Plaintiff claims "[u]nionized full time custodians often missed more work than I did." (Pl. Decl. ¶ 45). Aside from plaintiff's say-so, no evidence supports that assertion.

Shortly after plaintiff's hiring, Smith took a six-month medical leave of absence that lasted until June 2014. During that time, another supervisor reported to Smith by email that plaintiff had missed numerous days of work and had complained about the fact that he was not entitled to vacation days. Smith believed plaintiff should be terminated if the email's allegations were true. However, he testified that when he returned to work from medical leave, his time was consumed by high-priority tasks until the end of 2014, and he did not have time to address plaintiff's attendance issues until 2015.

On March 12, 2014, a custodial supervisor described plaintiff in writing as a "[v]ery hard working individual always ready to learn and do more." (Bergstein Decl. Ex. 7 at 5). An August 28, 2015, email from a maintenance mechanic working for the district also recognized "in particular" plaintiff's work on and dedication to a project that summer. (Id. Ex. 8). Smith testified he thought plaintiff "had potential to be a good cleaner, other than his attendance." (Id. Ex. 2 at 58).

By letter dated June 9, 2014, the district offered to continue plaintiff's employment through the 2014–15 academic year. (Pl. Decl. Ex. 2). Plaintiff accepted the offer by signing the letter and mailing it back to the district.

In late August or early September 2015, Smith approached Steven Walker, then the district's assistant superintendent for human resources, and told Walker he wanted to fire plaintiff because of plaintiff's attendance issues. According to Smith, Walker told Smith to gather supporting documentation, after which Walker "would take care of processing the termination decision." (Smith Decl. ¶ 26).

In mid-September, Smith reviewed and analyzed plaintiff's attendance records from January 1, 2014, through September 16, 2015. Smith concluded plaintiff missed work on 118

days during that period, only 46 of which were medically or otherwise excused. However, plaintiff's time records reflect that his attendance improved as 2015 progressed. From January 2014 through May 2015, plaintiff missed roughly 70 workdays; from May through September 16, 2015, plaintiff accrued only six unexplained absences. Smith met with Walker after completing his analysis and "presented the documentation to" him. (Bergstein Decl. Ex. 2 at 44).

On September 30, 2015, plaintiff sent a letter to several district employees in management or supervisory positions. The letter expressed plaintiff's "feel[ing] that my rights under the American Disabilities Act are being violated," asserted plaintiff was "being discriminated against due to my medical condition of Type 1 Diabetes," and noted three other substitute custodians had received promotions in the prior two years. (Doc. #60 ("Walker Decl.") Ex. H). The letter further claimed, "Any sick days I have had as a result of my illness have been documented with doctor's notes." (Id.). Plaintiff also asked to be considered for a promotion to "an upcoming custodian position."[5] (Id.). Plaintiff testified he sent this letter "because I felt like I was being treated unfairly and being skipped over" for a promotion "more than once." (Bergstein Decl. Ex. 1 at 116).

Walker testified he received plaintiff's September 30 letter after Smith recommended to Walker that plaintiff be fired, and before plaintiff's formal termination. According to Walker, he discussed the September 30 letter with members of the district's board and with an attorney.

---

[5] At his deposition, plaintiff testified he also sent unspecified emails on unspecified occasions to district officials including the superintendent and assistant superintendent. (See Bergstein Decl. Ex. 1 at 46–47). The record contains no such emails.

On October 29, 2015, plaintiff told Smith he needed hand surgery that would require him to miss work from November 3 to 9, 2015. Smith told plaintiff to move the surgery to the week of Thanksgiving so that it would not cause plaintiff to miss work.

During that October 29, 2015, conversation, plaintiff also asked Smith about a promotion. (See Johnson Decl. Ex. K at 9 ¶ 7).[6] Smith told plaintiff he was not being promoted because of his poor attendance. Smith also said plaintiff's poor attendance was unacceptable and that Smith "didn't know what to do" about plaintiff's attendance issues; was going to talk to Walker and "let [him] make all the decisions"; and "was going to let Steven Walker decide" whether to terminate plaintiff. (Id. Ex. A at 42–43). Plaintiff understood Smith was referring during that conversation to potentially terminating plaintiff's employment.

Plaintiff rescheduled his hand surgery for the week of Thanksgiving and told Smith he had done so to accommodate Smith's request. Plaintiff claims Smith replied, "You're not accommodating me, you're accommodating yourself." (Johnson Decl. Ex. K at 9 ¶ 7).

A few days later, on November 3, 2015, plaintiff submitted to the district a form used to request medical leave under the FMLA. The form is signed by plaintiff's endocrinologist. It notes plaintiff was not "unable to perform any of his/her job functions," estimates plaintiff's

---

[6] The record is unclear whether this conversation took place on October 29, 2015, or instead occurred sometime before plaintiff mailed his September 30, 2015, letter alleging disability discrimination. In a verified complaint plaintiff submitted to the New York State Division of Human Rights, plaintiff stated the conversation happened on October 29, 2015. (See Johnson Decl. Ex. K at 9 ¶ 7). However, plaintiff's deposition testimony on the point is unclear: he described the interaction during remarks addressing events in August 2015, but when asked whether Smith "h[ad] that conversation with you in August of 2015," he replied, "I don't remember if it was that time." (See Smith Decl. Ex. 1 at 42–44). Smith, for his part, says the conversation happened in August. (Smith Decl. ¶ 25).

Viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in plaintiff's favor, the Court assumes, for purposes of the present motion, that the conversation happened on October 29, 2015.

diabetes may cause him to miss one to two days of work every three months, and states plaintiff may need to have periodic doctor's appointments to adjust his insulin dosage. (See Johnson Decl. Ex. M). The form does not request any specific leave from work. Plaintiff asserts the district did not respond to his submission of the form.

By letter dated December 2, 2015, Walker informed plaintiff that Walker planned to recommend to the district's board on December 15, 2015, that it vote to terminate plaintiff's employment. (Walker Decl. Ex. E). According to Walker, the board had never rejected his recommendation that a custodian be fired, although it had rejected at least one such recommendation to fire noncustodial staff.

On December 15, 2015, the Board terminated plaintiff by unanimous vote.

According to the declaration of District Superintendent Douglas Adams, in the fall of 2015, Walker was responsible for deciding which personnel matters to include on agendas for the district's board meetings. Adams's declaration states the reason plaintiff was not fired before December 15, 2015, is that the district's board was busy dealing with matters of higher priority.

## DISCUSSION

I.  Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[7]

---

[7] Unless otherwise indicated, case quotations omit all citations, internal quotation marks, footnotes, and alterations.

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary

judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.  Disability Discrimination Claims

Plaintiff's brief in opposition to the district's summary judgment motion does not address his disability discrimination claims.

Exercising its discretion, the Court deems those claims abandoned.

"In this Circuit, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition to summary judgment that relevant claims or defenses that are not defended have been abandoned." Page v. Half Hollow Hills Cent. Sch. Dist., 2019 WL 764748, at *7 (E.D.N.Y. Feb. 20, 2019) (collecting cases). Doing so may be appropriate when a "[p]laintiff d[oes] not even reference those claims in his opposition brief, let alone address any of [a] Defendant['s] arguments." Id. at *8. That is the case here. Moreover, plaintiff's counsel stated at an on-the-record pre-summary judgment motion conference that he was preliminarily inclined to drop plaintiff's discrimination claims and focus on plaintiff's retaliation claims instead. (See Doc. #55 at 10–11).

The Court therefore grants summary judgment in the district's favor on plaintiff's claims of disability discrimination under the ADA, Rehabilitation Act, and FMLA.

III.  Retaliation Claims

The district argues plaintiff's retaliation claims fail as a matter of law.

9

A.  Legal Standard

The ADA provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The Rehabilitation Act and FMLA likewise prohibit such retaliation. See 29 U.S.C. 794(d) (Rehabilitation Act); 29 U.S.C. § 2615(a) (FMLA).

The familiar McDonnell Douglas burden shifting framework governs ADA, Rehabilitation Act, and FMLA retaliation claims. See Jackson v. N.Y.C. Dep't of Ed., 768 F. App'x 16, 17 (2d Cir. 2019) (summary order) (ADA and Rehabilitation Act); Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 429 (2d Cir. 2016) (FMLA).

First, a plaintiff must establish a prima facie case. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). In the retaliation context, this means a plaintiff must show "(1) he engaged in [protected activity]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). A plaintiff's "burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998). Second, once a plaintiff presents a prima facie case, the defendant then bears the burden of articulating a legitimate, non-discriminatory reason for the employment action. Weinstock v. Columbia Univ., 224 F.3d at 42. And third, "[i]f [the] defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the

10

employer's explanation is merely a pretext for impermissible retaliation." Treglia v. Town of Manlius, 313 F.3d at 721.

To satisfy the burden of showing pretext on summary judgment, a plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d at 42. "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id. "A plaintiff's evidence at the third step of the McDonnell Douglas analysis must be viewed as a whole rather than in a piecemeal fashion." Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 76 (2d Cir. 2016).

B. Application

For purposes of this motion, the Court assumes plaintiff has established a prima facie case of ADA, Rehabilitation Act, and FMLA retaliation. Further, the district plainly has identified a legitimate, non-discriminatory reason for firing plaintiff—namely, his multitudinous documented, unexcused absences from work. Plaintiff does not argue to the contrary.

The Court thus turns to the question of whether plaintiff has carried his burden of producing evidence sufficient to support a rational finding that the district's proffered non-discriminatory reason for plaintiff's termination was pretext for retaliation.

1. ADA and Rehabilitation Act Claims

With respect to his ADA and Rehabilitation Act retaliation claims, although it is a close call, plaintiff has carried his burden.

The district chose to rehire plaintiff for the 2014–15 school year notwithstanding his frequent and consistent unexcused absences. Plaintiff's attendance then markedly improved

from May to mid-September 2015. On September 30, 2015, after being skipped over for a promotion multiple times, plaintiff sent a letter to the district alleging the district had discriminated against him due to his diabetes. Viewing the evidence most favorably to plaintiff, Smith then told plaintiff, on October 29, 2015, that Smith planned to speak to Walker about potentially terminating plaintiff ostensibly due to his attendance issues. The district proceeded formally to terminate plaintiff on December 15, 2015, less than three months after plaintiff sent his September 30 letter.

The Court must take care to analyze these pieces of evidence not in isolation, but rather "as a whole, just as a jury would, to determine" whether a reasonable jury could return a verdict in plaintiff's favor. Friedman v. Swiss Re Am. Holding Corp., 643 F. App'x 69, 72 (2d Cir. 2016) (summary order). Having done so here, the Court is constrained to conclude that a rational fact finder could find pretextual the district's proffered reason for plaintiff's firing.

The Court therefore denies summary judgment on plaintiff's claims of retaliation under the ADA and Rehabilitation Act.

### 2. FMLA Claim

However, no rational juror could conclude the district terminated plaintiff in retaliation for the FMLA leave request form he submitted to the district on November 3, 2015.

The form does not request specific leave from work. Rather, it estimates that plaintiff may need to miss a day or two of work every three months and predicts plaintiff may also need to miss work for occasional doctor's appointments. The record shows beyond dispute that the district was well aware of those needs long before November 3, 2015: Smith knew before plaintiff was hired that plaintiff had diabetes, and plaintiff submitted to the district some 25 doctor's notes excusing numerous absences from work from March 2014 through October 2015.

12

(See Smith Decl. Ex. G). In the circumstances of this case, no fact finder could reasonably conclude that the district retaliated against plaintiff for submitting this form—which, again, did not request any specific FMLA leave—containing only information of which the district had long already been aware.

Accordingly, the Court grants summary judgment in the district's favor on plaintiff's claim of retaliation under the FMLA.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED IN PART, as to plaintiff's disability discrimination claims and FMLA retaliation claim, and DENIED IN PART, as to plaintiff's claims of retaliation under the ADA and Rehabilitation Act.

The Clerk is directed to terminate the motion. (Doc. #57).

All counsel are directed to appear for a case management conference on October 16, 2019, at 12:00 p.m., at which the Court will set a trial date and schedule pre-trial submissions.

Dated: September 27, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge